## Monroe's Adm'r v. Federal Union Life Ins. Co.

(Decided Dec. 5, 1933.)

T. C. CARROLL for appellant.

PETER, LEE, TABB, KREIGER & HEYBURN and A. E. FUNK, Jr., for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The Inter-Southern Life Insurance Company issued to Shirley P. Monroe a certain accident policy, the terms and liability of which were assumed by the appellee, the Federal Union Life Insurance Company. The sole question presented in this appeal is whether or not the terms of the policy included airplanes.

Part 2 of the policy reads:

"(a) By the wrecking or disablement of any auto-

mobile or motor driven car (motorcycles and railway cycle cars excepted) or horse-drawn vehicle not plying for public hire in which the insured is riding or driving or by being accidentally thrown from such wrecked or disabled automobile or vehicle.''

While the policy was in force and effect, the insured, Shirley P. Monroe, while riding in an airplane, was accidentally killed by the wrecking of the plane. The part of the petition relating to how the deceased came to his death reads:

"Plaintiff states that on the 6th day of August, 1932, the said Shirley P. Monroe, was killed by the wrecking of an airplane, towit, a motor driven car, not plying for public hire in which said Shirley P. Monroe, at said time was riding.''

Thereafter D. B. Monroe was duly appointed administrator of the estate of Shirley P. Monroe, deceased, and brought this suit in the Bullitt circuit court to recover under the terms of the policy for the death of his decedent. The lower court sustained a demurrer to the petition, and, appellant refusing to plead further, the petition was dismissed and appellant prosecutes this appeal.

It is further insisted that, where there is doubt as driven car'' immediately following the word ''automobile'' in the above-quoted paragraph of the policy include airplanes because airplanes have motors somewhat similar to that of automobiles, and thereby gave the insured protection additional to that covered by the word ''automobile.'' In the brief for appellant, there are quoted many definitions of the word ''automobile,'' taken from various authorities, including dictionaries, encyclopedias, text and judicial decisions, all of which tend to restrict the definition of ''automobile'' to apply to motor-driven vehicles on highways, but none of which is broad enough to include airplanes. It is insisted for appellant that the words ''or motor driven car'' is an addition to the word ''automobile,'' and thereby intended to broaden the liability of the policy beyond automobiles, and included any and all vehicles propelled by a motor which includes airplanes.

It is insisted for appellant that the words ''motor

to the meaning of words used in an insurance policy, the construction more favorable to the insured would be adopted so as to effectuate the insurance and not defeat it, and citing North River Ins. Co. v. Dyche, 163 Ky. 271, 173 S. W. 784; General Accident Fire & Life Assur. Corp. v. Louisville Home Telephone Co., 175 Ky. 96, 193 S. W. 1031, L. R. A. 1917D, 952.

It will be conceded that the rule contended for by appellant and as enunciated in the cases, supra, prevails where there appears in a policy phrases or words of ambiguous or doubtful meaning. But, where no ambiguity or words of doubtful meaning appear, the courts will construe a contract in accordance with the language employed, taking into consideration, however, the subject-matter and attendant circumstances which, of course, in many instances are very helpful, in construing and arriving at the intentions of the contracting parties.

It is common knowledge that the words "automobile" and "car" are used interchangeably; i. e., "car" being a substitute or synonym for "automobile." It will be noticed that the policy expressly excluded motorcycles and railway cycles, which indicates that the policy was intended to be very limited in its scope. The annual premium paid on the policy was $1.25 a year. The policy carries a liability under some clauses as high as $10,000, and under part 2, which is the basis of this action, it carries a maximum liability of $2,500, plus an additional 10 per cent., making a total maximum liability of $2,750, the amount sued for herein. These facts are strongly persuasive that the policy was intended to be very limited. It is generally known and recognized by all that riding in an airplane is indeed very hazardous. The insurer took the precaution to exclude motorcycles and railway cycles from the terms of the policy; then could it be said in the light of reason that it intended to include airplanes, which are more hazardous than the vehicles excluded?

In the case of Laporte v. North Am. Accident Ins. Co., 161 La. 933, 109 So. 767, 48 A. L. R. 1086, the court had under consideration the construction of a policy similar to the one in the instant case, except the policy involved in the case, supra, did not expressly except motorcycles, but used the words "motor driven car."

It was held in that case that a motorcycle was not a "motor driven car" within the meaning and intent of the insurance policy. There is more similarity in automobiles and motorcycles than in automobiles and airplanes. Then, if a motorcycle is not a "motor driven car" within the meaning of such insurance policies, it would be a far stretch of the imagination to hold that such language would include an airplane. It is common knowledge that an airplane is in a class by itself and not considered a motor-driven car. We know of no substitution for the word "airplane," while, on the other hand, the words "car" and "automobile" are used synonymously when speaking of motor-driven cars or vehicles which run on the ground. In the case of Landwehr v. Continental Life Ins. Co., 159 Md. 207, 150 A. 732, 70 A. L. R. 1249, the court held that one killed while riding in a side car attached to a motorcycle was not covered by an insurance policy providing for death "by wrecking or disablement of any private automobile, or motor driven car," etc. There are numerous other cases of similar holdings that could be cited, but it is unecessary to extend this opinion by reciting excerpts therefrom or making other references thereto.

Thus it will be seen from what has been said that such policies as are in question herein are given a very restricted meaning.

Section 2739g-1, Ky. St., provides that the word "automobile" shall include all vehicles that are propelled otherwise than by muscular power, excepting road rollers, etc., and section 2739g-2, subsec. (c) Ky. St. Supp. 1933, provides for the registration fees for automobiles and other motor vehicles. But it will be noticed that the statutes make no reference to airplanes. Thus it is obvious that the Legislature did not have in mind airplanes in its broad definition of "automobiles" and "motor vehicles." This, we think, further signifies the fact that automobiles, motor-driven cars, etc., and airplanes are spoken of and treated separately and not interchangeably or one as a substitution for the other.

It is our conclusion that the language used in the policy, construed in the light of the authorities herein cited, does not include an airplane, and there is no liability under the policy for the death of the decedent,

and the trial court properly sustained the demurrer to the petition.

The judgment is affirmed.