ARNOLD JERNIGAN v. HANOVER FIRE INSURANCE CO. OF NEW YORK, AND R. G. YANCEY, AGENT.

(Filed 26 March, 1952.)

**1. Insurance § 13a—**

Ordinary words in a policy will be given their commonly understood and popular meaning in the absence of language in the policy indicating an intent to use them in a special sense.

**2. Insurance § 45¾—**

A policy of fire insurance issued to a garage owner on "automobiles owned by insured and held for sale or used in repair service" does not cover a farm tractor purchased by insured for resale, there being no definitions in the policy giving the term "automobile" any meaning other than its ordinary and popular sense. "Car" and "automobile" are synonymous.

APPEAL by defendants from *Bennett, Special Judge,* and a jury, at the August Term, 1951, of WAYNE.

Civil action upon a fire insurance policy covering automobiles or cars.

Since the complaint states no cause of action against R. G. Yancey, Agent, and no judgment was rendered against him in the Superior Court, the term defendant is herein used to describe the Hanover Fire Insurance Company only.

These are the facts:

1. The plaintiff, Arnold Jernigan, owned a garage in a rural section of Wayne County, where he operated a sales and repair service.

2. On 22 March, 1948, the defendant, as insurer, and the plaintiff, as insured, entered into a contract whereby the defendant issued to the plaintiff for a stipulated premium a certain policy of fire insurance, bearing the expiration date 22 March, 1949, and covering "automobiles owned by the insured and held for sale or used in repair service" at the

plaintiff's garage. Subsequent to the fire hereafter mentioned, to wit, on 14 February, 1949, this rider was attached to the insurance policy: "It is hereby understood and agreed that this policy covers used cars and not new cars from the inception date of March 22, 1948."

3. On 28 March, 1948, the plaintiff bought a second-hand farm tractor, namely, a 1947 model John Deere "B" farm tractor, for the purpose of resale. While awaiting that contemplated event, the plaintiff used the farm tractor around the garage "for towing cars and things like that."

4. On 23 July, 1948, the plaintiff's farm tractor was destroyed by a fire which consumed the plaintiff's garage and its contents.

5. The plaintiff gave the defendant immediate notice of the loss of the farm tractor, and the defendant forthwith denied liability to the plaintiff therefor on the ground that the tractor was not covered by its policy of insurance.

6. The plaintiff thereupon brought this action against the defendant, alleging that the policy insured the farm tractor against loss by fire and praying judgment accordingly. The defendant answered, denying the material allegations of the complaint relating to the fire and averring that the farm tractor was not within the coverage of the policy.

7. When the cause was tried in the Superior Court, the presiding judge ruled as a matter of law that the farm tractor was an automobile or a car within the purview of the policy, and submitted issues relating to the destruction of the tractor by fire and the amount of the resultant loss to the jury. The jury answered these issues in favor of the plaintiff. The presiding judge entered judgment for the plaintiff and against the defendant for the amount of the loss as fixed by the jury, and the defendant appealed, assigning the denial of its motion for a compulsory nonsuit and other rulings of the trial judge as error.

*J. Faison Thomson and H. T. Ray for plaintiff, appellee.*

*Taylor & Allen and Lindsay C. Warren, Jr., for defendant, appellant.*

ERVIN, J. According to both common usage and statutory definition, a farm tractor is a "motor vehicle designed and used primarily as a farm implement for drawing plows, mowing machines, and other implements of husbandry." G.S. 20-38 (h); *State ex rel. Rice v. Louisiana Oil Co.,* 174 Miss. 585, 165 So. 423; *Davis v. Wright,* 194 Okl. 451, 152 P. 2d 921.

Common knowledge attests that when the term car is applied to a motor vehicle, it is used as a synonym for automobile. *Monroe's Adm'r v. Federal Union Life Ins. Co.,* 251 Ky. 570, 65 S.W. 2d 680; *City of Philadelphia v. Philadelphia Transp. Co.,* 345 Pa. 244, 26 A. 2d 909. This being so, the assignment of error based on the denial of the motion for a compulsory nonsuit raises the question whether a farm tractor is

an automobile within the purview of a fire insurance policy which does not undertake to define the latter term.

An automobile is the vehicle which one exasperated judge said is "too largely owned more or less conditionally by those not more than six lengths ahead of the wolf, infesting the public streets, contemptuous of the rights of pedestrians, like Jehu driving furiously—a rare combination of luxury, necessity, and waste." *U. S. v. One Automobile,* 237 F. 891. While this judicial description of an automobile may contain at least a modicum of truth, it does not furnish a solution of our present problem.

Inasmuch as there is nothing in the policy indicating that the parties intended the word automobile to have a different meaning, it is to be taken and understood in its ordinary and popular sense. *Bailey v. Insurance Co.,* 222 N.C. 716, 24 S.E. 2d 614; *Stanback v. Insurance Co.,* 220 N.C. 494, 17 S.E. 2d 666.

*Justice Oliver Wendell Holmes, Jr.,* asserted with absolute accuracy that "a word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 38 S. Ct. 158, 62 L. Ed. 372. This observation finds apt illustration in the terminology employed at different times and in varying circumstances to designate the several kinds of self-propelled vehicles, which move about on the surface of the earth otherwise than on fixed rails or tracks.

Common usage has made the words motor vehicle a generic term for all classes of self-propelled vehicles not operating on stationary rails or tracks. As a result, all automobiles are motor vehicles. *Motors Corp. v. Flynt,* 178 N.C. 399, 100 S.E. 693. But the contrary proposition is not true. The term motor vehicle is much broader than the word automobile, and includes various vehicles which cannot be classified as automobiles. 60 C.J.S., Motor Vehicles, section 1.

When motor vehicles made their initial appearance around the turn of the century, they were employed to transport persons or goods, and were called horseless carriages on account of the service they rendered. *Diocese of Trenton v. Toman,* 74 N. J. Eq. 702, 70 A. 606. As the functions and numbers of motor vehicles increased, this homely name fell into disuse, and various terms were adopted or invented to designate sundry sorts of motor vehicles. One of these terms was automobile, which has now acquired both a general and a particular meaning in common usage. When it is employed in its general sense, the word automobile embraces all kinds of motor vehicles, except motorcycles, designed for use on highways and streets for the conveyance of either persons or property. *Bank for Savings & Trusts v. U. S. Casualty Co.,* 242 Ala. 161, 5 So. 2d 618;

*Life & Cas. Ins. Co. of Tenn. v. Benion,* 82 Ga. App. 571, 61 S.E. 2d 579; *Life & Casualty Co. of Tennessee v. Roland,* 45 Ga. App. 467, 165 S.E. 293; *Carter v. State,* 12 Ga. App. 430, 78 S.E. 205; *Life & Casualty Ins. Co. of Tennessee v. Metcalf,* 240 Ky. 628, 42 S.W. 2d 909; *Baker v. City of Fall River,* 187 Mass. 53, 72 N.E. 336; *Hoover v. National Casualty Co.,* 236 Mo. App. 1093, 162 S.W. 2d 363; *Kellaher v. City of Portland,* 57 Or. 575, 112 P. 1076; *Strycker v. Richardson,* 77 Pa. Super. Ct. 252; *Stanley v. Tomlin,* 143 Va. 187, 129 S.E. 379; *Wiese v. Polzer,* 212 Wis. 337, 248 N.W. 113; 5 Am. Jur., Automobiles, section 3; 60 C.J.S., Motor Vehicles, section 1. When it is used in its particular sense, the term automobile includes such motor vehicles, other than motorcycles, as are intended for use on highways and streets for the carriage of persons only. *American-La France Fire Engine Co. v. Riordan,* 6 F. 2d 964; *Bank for Savings & Trust v. U. S. Casualty Co., supra; Neighbors v. Life & Casualty Ins. Co. of Tennessee,* 182 Ark. 356, 31 S.W. 2d 418; *Paetz v. London Guarantee & Accident Co.,* 228 Mo. App. 564, 71 S.W. 2d 826; *American Mut. Liability Ins. Co. v. Chaput,* 95 N.H. 200, 60 A. 2d 118; Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.), section 2. See, also, in this connection: *Bullard v. Life & Casualty Ins. Co.,* 178 Ga. 673, 173 S.E. 855; *Landwehr v. Continental Life Ins. Co.,* 159 Md. 207, 150 A. 732, 70 A.L.R. 1249; *Colyer v. North American Acc. Ins. Co.,* 230 N.Y.S. 473, 132 Misc. 701; *Deardorff v. Continental Life Ins. Co., St. Louis, Mo.,* 301 Pa. 179, 151 A. 814; *Moore v. Life & Casualty Ins. Co.,* 162 Tenn. 682, 40 S.E. 2d 403.

Although it is a motor vehicle, a farm tractor cannot properly be classified as an automobile in either the general or the particular sense. This is so for the very simple reason that it is neither designed nor suitable for use on highways and streets for the transportation of either persons or property. *Tidd v. New York Cent. R. Co.,* 132 Ohio St. 531, 9 N.E. 2d 509. Hence, this action ought to have been involuntarily nonsuited on the ground that the plaintiff's farm tractor was not covered by the fire insurance policy issued by the defendant.

The policy in the instant case is quite different from that involved in *Koser v. American Cas. Co. of Reading,* 162 Pa. Super. 63, 56 A. 2d 301, where the language employed to express the contract ignored the ordinary and popular meaning of the word automobile, and made that word a general term to cover all motor vehicles except those specifically excluded.

While the matter is not germane to the inquiry presented by the appeal, we note, in closing, that the Motor Vehicle Act enlarges the meaning of the term motor vehicles even beyond that accorded it by common usage. G.S. 20-38 (p). Moreover, the Act divides and subdivides the various sorts of motor vehicles into specific classes with technical precision. G.S. 20-38. · It is not likely, however, that the technical definitions employed

by the Act will ever find their way into the everyday language of the people.

The judgment rendered in the Superior Court is hereby
Reversed.